ELLIS, Judge.
Fred Voorhies, hereinafter referred to as appellee, filed suit via executiva to foreclose on a mortgage note signed and executed by W. D. Hance, hereinafter referred to as the appellant, which was secured by a mortgage on the northeasterly one-half of Lot 19, and all of Lot 18, Block 2, River Oaks Subdivision, Parish of Lafayette, Louisiana. An order of executory process issued and the appellant.was cited to- pay the indebtedness within the de-lays-cited by lav/. The appellant, who was the Original defendant, secured a temporary restraining order *616 and asked for a preliminary and permanent injunction on the ground that the. note sought.to be foreclosed on was issued and obtained in contravention of Federal law, to-wit: Act of Congress of June 22, 1944, Chapter 268, Title III, § 501, 58 Statutes 292 as amended, 38 U.S.C.A. § 694a. In the alternative appellant plead payment of the third annual installment, the alleged failure to pay being the basis of appellee’s foreclosure on the note. Other facts pertaining to the payment are set forth in appellant’s petition for an injunction but it is not necessary that they be enumerated at this time.
As stated by the District Judge:
“The action of W. D. Hance, plaintiff in injunction, is admitted by him to have been brought under Code of Practice, Articles 738, 739 and 740. His application is based primarily under subdivisions, 1, 4, 6, and 7 of Article 739 which reads as follows :
“ T. That he has paid the debt for which he is sued;’
“ ‘4. That time has been granted to ' him for paying the debt .although this circumstance be not mentioned in the contract;’
“ ‘6. That it was obtained by fraud, violence, fear, or some other unlawful means
“ ‘7. That he has a liquidated account to plead in 'compensation to the debt claimed;’ ”
After hearing the lower court granted the preliminary injunction and found that there had been an overcharge of $425, the value of a water well, pump, tank and pipe located on the property purchased by appellant, as the same had been included in two sales. By agreement of counsel the entire record on the preliminary injunction was to be considered by the court on the trial of the permanent injunction. After trial on the permanent injunction the court denied the application except that a mortgage note in the original and principle sum of $1870.24 be reduced by the amount of $425, found to be an overcharge, and the inclusion there of as consideration for the second mortgage “is morally impossible, and will be declared null and void.”
From this judgment appellant, defendant in the foreclosure suit and plaintiff in the injunction proceeding, appealed to this court suspensively and devolutively, and appellee answered the appeal requesting inter alia reversal of the trial court’s judgment which allowed a reduction in the mortgage of $425.
It is shown that the appellee was the developer and owner of River Oaks Subdivision in the City of Lafayette, Louisiana, and it gave a listing of a certain lot together with the home thereon to a real estate agent, J. Alfred Mouton. This property on a prior occasion had been appraised by the Veterans’ Administration in a loan in the amount of $6,900 approved for another veteran but the deal was npt consummated. The appellant, who was also a veteran, became interested in the property through an advertisement of same. The appellant testified that the price quoted to him was $8,400 but in view of the fact that the Veterans’ Administration would approve a loan of only $6,900, he agreed to separately purchase a well, pump, tank and pipes located on the same lot as the home he was buying, together with approximately 2,080 feet of two inch pipe laid under the street through which appellee had been supplying, and for which he was paid, water to various other residents in the subdivision, for a consideration of $1,500.
Also included in the same note was the sum of $345 which represented 5% of the Veterans’ Administration loan of $6,900 plus $10 more advanced by appellee to appellant and paid to the .Veterans’ Administration, ■leaving the amount due the Veterans’ Administration by appellant of $6,545. The mortgage to the Veterans’ Administration describes “That certain parcel of ground together with buildings and all other improvements thereon * * * ”, etc. This portion of the description is included in view of the fact that it is the contention of appellant and the judge so found and al *617 lowed a credit of $425 due to appellant as this description transfers the home, pump, tank and pipe located .on the property purchased by appellant.
Introduced in evidence is an agreement to purchase in which the appellee agrees to sell to the appellant “that certain parcel of ground together with the buildings thereon * * * ”, etc.; the consideration to be $6,900 payable through the proceeds of a Veterans’ Administration direct loan. We then find this agreement to be supplemented as follows:
“This letter is given to supplement the purchase agreement entered into between yourself and'Mr. Fred Voor-hies on this date on the following described property:
“That certain parcel of ground, together with the buildings thereon, situated in the. River Oaks Subdivision in the Parish of Lafayette, Louisiana, and according to the map of said subdivision on file in the Recorder’s office for said parish, consists of Lot No. 18 and the northeast half of Lot No. 19 of Block No. 2 of said subdivision; said parcel of land having a frontage of 90 feet by a depth in parallel lines of 127.8 feet.
“It is hereby agreed and understood that the purchase of said property shall include the Automatic Electric Pump and. Well and the Water Distributing System attached to this well, which is presently serving the homes now completed in the , River Oaks Subdivision. The seller hereunder, Mr. Fred Voor-hies, guarantees that the purchaser will have a minimum revenue from said Water Distributing System of $20.00 per month for a minimum period of two years.
“The seller, hereunder, Fred Voor-hies, agrees and it is a. part of the consideration of this transaction, that he will construct a walkin closet, measuring approximately 6' x 7', adjoining the front bedroom and over the area conj sisting of part of the present front porch; he will, ■ also, rearrange the closet in .the front bedroom so that its-opening will be in the bathroom, and will not open into the front bedroom. All of the above construction ai%d changes to be at the cost of the seller, Fred Voorhies. It is agreed and understood that these changes will be made after the completion of the financing of this property through a Veterans’ Administration Direct Loan.,
“As a further consideration of this transaction, the seller Fred Voorhies, will allow to the purchaser an amount up to $150.00 for changing the construction of the closet in the rear bedroom. It is agreed and understood that these changes will be made after the completion of the financing of this property through a Veterans’ Administration Direct Loan.
“The purchase price for this property under the terms, conditions, and considerations hereinabove mentioned is to be $8,400.00; payable through the proceeds of a loan of $6,900.00 through a Direct Veterans’ .Administration Loan and the remaining balance of the purchase consideration to be payáble in Five Equal Annual Installments, secured by mortgage note on the property herein sold.
“The purchaser hereunder has made a ‘Good Faith Deposit’ of $200.00 which shall be applied against the costs of closing the loan on said property.
“Very truly yours,
“J. Alfred Mouton, Inc.
(sgd) J. Alfred Mouton
“Acknowledged and Accepted:,
“(sgd) W. D. Hance
“Purchaser
“(sgd) Fred Voorhies
“Seller, Fred Voorhies.”
(Emphasis added.)
We also find in the record with regard to the water distribution system the following agreement signed by the appellee and appellant:
“State of Louisiana
Parish of Lafayette:
*618 "Articles of Agreement entered into on this 30th day of April, 1951, by Fred Voorhies, hereinafter referred to as Contractor, and W. D. Hance, hereinafter referred to as Operator.
“The Contractor for a valuable consideration this day received, does hereby sell, transfer and deliver unto the Operator
“That certain deep well with pump and equipment attached thereto; water distribution system presently located in the River Oaks Subdivision in the Parish of Lafayette, Louisiana.
“The Contractor guarantees to the Operator a minimum gross revenue of Twenty ($20.00) Dollars per month for the first two years.
“The Operator agrees to furnish and to continue furnishing water for domestic purposes to present property owners of River Oaks Subdivision as well as any future owners who may tap the present line.
“The Operator agrees to furnish water for domestic purposes for a flat rate of Two ($2.00) Dollars per customer monthly.
“The Operator agrees to keep the above described water work system in good condition and repair and to furnish water without interruption except for the happening of events beyond his control.
“In the event that the Operator abandons the operation of this community water system that portion of the distribution system located outside of Lots 19 and 18, Block 2, River Oaks Subdivision, shall revert back to the Contractor.
“Thus Done and Signed on the day above written before two competent witnesses.
“Witnesses:
s/ J. Alfred Mouton
s/ Irene L. Schoops
s/ Fred Voorhies
Fred Voorhies, Contractor
s/ W. D. Hance
W. D. Hance, Operator.”
It is shown that none of the agreements with regard to the sale of the water distribution system were ever made known to the Veterans’ Administration. It is contended by the appellant that there was a misrepresentation to the Veterans’ Administration of the true consideration of the sale for the purpose of inducing it to act favorably on the loan application. Counsel for appellant argues in his brief:
“The Act of Congress providing for G.I. Loans provides that the Veteran shall not pay more than the ‘reasonable value’ of the property purchased, as determined by the Veterans Administration, and that the veteran may recover triple the amount of any overpayment from the seller. Act of Congress of June 22, 1944, C. 268, Title III, Sec. 501 and 503A. (38 U.S.C.A. 694a, 694c-l) Subsection (3) of Section 694a of the U. S. Code annotated provides as follows:
“‘(3) That the price paid or to be paid by the veteran for such property or for the cost of construction, repairs, or alterations does not exceed the reasonable value thereof as determined by proper appraisal made by an appraiser designated by the Administrator.’ ”
Section 694c-l of the Code provides as follows:
“ ‘Whoever knowingly makes, effects or participates in a sale of any property to a veteran for a consideration in excess of the reasonable value of such property as determined by proper appraisal made by an appraiser designated by the Administrator, shall, if the veteran pays for such property in whole or in part with the proceeds of a loan guaranteed by the Veterans’ Administration, under Section 694a, 694b, or 694c, of this title, be liable for three times the amount of such excess consideration irrespective of whether *619 such person has received any part thereof.
“ ‘Actions pursuant to the provisions of this section may be instituted by the veteran concerned, in any United States district court, which court may, as a part of any judgment, award costs and reasonable attorney’s fees to the successful party. In the event the veteran shall fail to institute any action under this section within thirty days after discovering he has overpaid, or having instituted an action shall fail diligently to prosecute the same, or upon request by the veteran, the Attorney General, in the name of the Government of the United States, may proceed therewith, in which event one-third of any recovery in said action shall be paid over to the veteran and two-thirds thereof shall be paid into the Treasury of the United States.
“ ‘The remedy provided in this section shall be in addition to any and all other penalties imposed by law. June 22, 1944, c. 268, Title III, Section 503A, as added Sept. 13, 1951, c. 381, 65 Stat. 320.’”
Counsel for appellant relies upon the case of Diamond v. Willett, La.App., 37 So. 2d 338, in which the Veterans’ Administration approved a loan and placed a value of $6000 upon the property to be purchased by the veteran. In this case there was also a separate agreement that the veteran was actually to pay $7,000 for the property. The loan, the sale and the mortgage against the property for $6000 was executed and in addition Willett and his wife executed a $1000 promissory note payable in monthly installments to Diamond. The Second Circuit Court of Appeal affirmed the judgment of the District Court which rejected the main and reconventional demands of both parties.
The case under consideration is distinguishable from the cited case in that appellant herein was receiving additional and separate property from that upon which the Veterans’ Administration made its appraisal and loaned the sum of $6,545. Appellant actually got the well, pump, tank and the pipe located on the lot he purchased, as. well as 2,080 feet of two inch pipe located! ■off of the property, and a guarantee of $240 per year for a period of two years; return from other owners in the subdivision who were sold water from the well in question, and also various repairs and alterations.
The Diamond case, supra, is additionally distinguishable because the disallowed additional indebtedness exceeded the reasonable valuation as fixed by Veterans’ Administration on appraisal. Here, the certificate of reasonable valuation, the appraisal, and the testimony of the appraiser indicate that the valuation of $6,900 did not include the valuation of the well, which was omitted both from the sketch and under the description “other improvements” or “other fixtures” which reflected "none.” It is, of course, also unquestioned that this valuation did not include the additional repairs and alterations requested by Hance. The Congressional Act only prohibits the exacting of consideration in addition to the reasonable value as fixed by VA appraisal, and the additional property sold or furnished was from the record worth the additional consideration, and not inflated in value to evade the regulation in question.
It is argued that in view of the language of the sale of the property from appellee to appellant that the well was included, and therefore it could not be sold again under the second agreement above, supra. This is true, but appellant loses sight of the fact that he only paid once for the. well, pump, tank and pipe located on the property, and the mere fact that it was transferred twice is immaterial. He agreed to pay $1,500 in addition to the $6,900, making a total of $8,400, for the water distribution system, etc., and the house and lot. He only paid once and therefore the deduction of $425 made on the above erroneous theory of two sales, which would imply two payments, was in error.
*620 It is the contention of the appellee that the $1,870.24, the principal amount of the second mortgage note, which is sought to be'foreclosed herein, was made up of a sale of the water distribution system plus the repairs and alterations shown in the agreement marked Plaintiff Ex. #1. This contention does not seem to be well founded in 'view of the fact that the emphasized portion of the agreement clearly states that the cost of this work was to be paid by the seller, Fred Voorhies, appellee. It could not form a part of the consideration of $1,870.24 shown on the second mortgage note. It would appear that appellant’s contention as to what the $1,870.24 included is correct, especially in view of the fact that the total is in complete accord with the item of $1,500 for the water works system including the pipe, etc., plus $355 advanced by appellee to appellant to cover 5% of the veteran’s loan and which is shown to be $10 Over that amount but which the Veterans Administration received, plus $15.24 which counsel for appellant states is Veteran Administration inspection fee. Instead of $10 contended by appellant to be a portion of the $25.24 inspection fee, this must' be included in'the $355, leaving $15.24 of which amount $10.10 under the testimony of Mouton, Real Estate Agent, is shown to be for procuring the appraisal of the property, and $2 for credit report and $3.14 for closing the' sales. According to a statement stamped on the “Certificate of Reasonable Value”, “The fee for procuring the• appraisal on the property identified in this certificate may not be charged to a veteran purchaser” (Emphasis added.)
Under the facts and the law and for the reasons above-enumerated, the attack upon the note and mortgage by ap-pellee on the ground that it violates the Federal Law should be denied.
As to the alternative ground of payment, from the testimony it appears that the injunction should be sustained.
The principal obligation of the note was $1,870.24. On the back of the note we find the following:
“4-30-52 1870.74
Int. 112.24
Total 1982.98
Cr. 240
Cr. 195 415.00
Bal. 5/1/52 - 1567.98
Cr. 297.74
Bal. Due 4/1/53 1270.24”
The first error noted, is the statement that the principal is $1,870.74 instead of $1,870.-24. This would make the interest $112.21 instead of $112,24. The $10.10 illegally charged the veteran in the calculations for the purpose of the opinion was deducted at the end rather than at the beginning, as it should have been, but as it makes no difference and will show an overpayment by the veteran of the installment due, the calculation will not now be changed.
The next mistake we note in the credits on the back of' the note, supra, is in the addition of $240 and $195, for on the note it is shown as $415 when it should have b.een $435. • .Therefore, deducting $112.21 interest for the first year of 1952 from the $435 paid on the principal, we obtain a principal amount of $322.79, which, deducted from'the total of $1,870.24 leaves a balance of $1,547.45.
In 1953 appellee after adjustment, of the water works credit account which was guaranteed for two years, the note shows a payment of $297.74 on principal, or, due to the error the appellee thought that he had been overpaid approximately $2.76 the previous year, on the principal, and he therefore deducted it and credited appellant with a' payment of $297.74 on the principal in 1953. Whether either one of these surmises are correct, it remains that there is no dispute that he paid the first $300 on the principal for 1953 as well as the interest. In figuring the interest for 1953, due to the previous errors pointed out, it should have been $92.85 but on the basis of the figures of appellee and as shown on the back of the note, it would have figured $94.08, leaving a difference of $1.23 over *621 payment which should be credited to appellant’s account against the balance due.
Deducting $297.74 from the correct balance of $1,547.45, we have a principal left of $1,249.71, and also taking from this the $1.23 overpayment leaves us a principal balance after payment in 1953 of $1,248.48.
When we come to the 1954 payment, therein lies the disagreement. Appellant and appellee have jointly offered in evidence the following document:
“Mr. Fred Voorhies
Lafayette, La.
Third payment. $300.00
Interest from 5/1/53 to
. 5/1/54 76.21
376.21
Charges for water 73.00
Net amount due 303.21
Now:
1. On May 14, one faucet was
installed by Landry on lot
next to us for 1 month
Charge 2.00
2. Oct. 29, Brother Byron house. was tied on, by Landry
Charge 6 mo. 12.00
3. Dec. 11,. Mr. Picard house was tied on by Landry
Charge 2% mo. 5.00
4. New House on hill (unknown) about Feb. 1st
Charge 3 mo. 6.00
5. 2 connections to you @ $4.00 per mo. 48.00
Total charges 73.00”
Appellant on May 1st went to the office of the appellee and in accordance with this statement, tendered him a check for $303.21. Üpon discussion, appellant found that he had charged appellee with two water connections or a total of $48 when as a matter ■of fact, he should only have charged for •one connection or a total of $24. Upon being shown his mistake by appellee he immediately wrote a check for $24 which, together with the $303.21 check, he tendered or gave to appellee. Appellee refused this payment, not on the ground that it was not a legal tender — there is no such question involved in the case — but strictly on the ground that he denied that the other four items shown on the above offering of $2, $12, $5 and $6, or a total of $25, should be deducted by appellee from his payment. Appellant left the checks and very soon thereafter appellee turned it over to his present counsel for collection. Appellant’s attorney then called appellee about the matter and on or about May 4 appellant returned to appellee’s office and offered to pay him the entire amount including the disputed amount, which was refused by appellee, and appellant was told to see' appellee’s attorney -and it was then refused, and hence the foreclosure.
However, we see from this that appellant was only $25 short of paying in full, according to the appellee’s records, the entire amount. Let us further examine the account and see whether appellant had not, in fact, overpaid the amount due.
Returning to the principal amount due at the time the 1954 installment was due, we find it was $1,248.48, and when we figure 6% interest on this amount, it gives us $74.91, or a total due of principal and interest of $374.91. Appellant had tendered $327.21 and the appellee Voorhies admitted owing him $24 on the water connection, which gave a total of $351.21, and the $10.10 illegally charged would make a payment of $361.31, and to this amount must be added the $20 for which they failed to give him credit on the principal in 1952, making a total payment of $381.31 had the two checks been accepted, and he is entitled to overpayment on interest for 1952, and 50(5 overpayment on principal in 1953 and $1.23 overpayment of interest in 1953 which would give a total of $383.07, or an overpayment of $8.16.
Therefore, in view of the fact that there was no question of an illegal tender, the amount refused by appellee together with the credits shown, would have overpaid *622 the installment due in principal and interest for 1954 by $8.16.
It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled and set aside and reversed and it is now ordered that there be judgment in favor of W. D. Hance and against Fred Voorhies enjoining the said Fred Voorhies and the Sheriff of the Parish of Lafayette, Louisiana, from proceeding with the advertisement and sale of the property in question, and restoring to the said W. D. Hance the possession of the property seized upon the payment by W. D. Hance of the installment and interest due previously tendered in the amount of $319.05.
It is further ordered that all costs of this suit shall be paid by Fred Voorhies, appel-lee herein.